## COUNTY OF WORCESTER, OCTOBER TERM 1841, AT WORCESTER.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY,
} Justices.

---

## ALFRED D. FOSTER vs. INHABITANTS OF MEDFIELD.

The provision of the Rev. Sts. c. 48, § 9, that expenses for the support of lunatics com mitted to the State Lunatic Hospital, shall be paid by the town in which such lunatics had their settlement at the time of their commitment, extends to cases where the commitment was made before the revised statutes or the St. of 1834, c. 150, went into operation.

The repeal of St. 1833, c. 95, under which lunatics were committed to the hospital, did not operate as a discharge from their commitment.

Where, without the knowledge of the trustees of the hospital, an agreement was made between A. and the town, in which a lunatic had his settlement, that A. should pay for the support of a lunatic, who had been committed to the hospital, and save the town harmless ; and A. afterwards requested the treasurer of the hospital to send to him the bills for the lunatic's support as they should become due, and several bills were so sent to him and paid by him, and he then declined to make any further payments ; it was held, that the town was not exempted, by the Rev. Sts. c. 48, § 9, from liability to pay for the subsequent support of the lunatic, no " other sufficient security, to the satisfaction of the trustees," having " been taken for such support."

THIS was an action of assumpsit, brought by the treasurer of the State Lunatic Hospital, to recover $ 277·25 for the support

of William W. Allen, confined in the hospital as a lunatic, from June 1st, 1837, to May 31st, 1839, inclusive.

The parties submitted the case to the court on the following facts : Said Allen was committed to the hospital, by order of the judge of probate for the county of Norfolk, on the 5th cf June 1833, being then an inhabitant of Medfield, and residing and having his settlement in that town. On the 21st of March 1834, $ 65 were paid for and in behalf of said town by their agent, on account of the expenses and support of said Allen, from the time of his commitment to December 1st, 1833.

Joseph Allen, brother of said lunatic, to induce said town to desist from further prosecution of his and said lunatic's father to compel him to pay the expenses of said lunatic's support, refunded to the town said $65, and agreed with the town that he would pay for said lunatic's support, and save the town harmless from the same thereafter. But of this arrangement the officers of the hospital had no knowledge. Prior to the making up of the semi-annual accounts of the hospital to June 1st, 1834, said Joseph Allen requested of the plaintiff that the bills, as they became due, should be sent to him for payment. They were regularly sent, and regularly paid by him, up to May 31st, 1837, inclusive. The bill from June 1st, to November 30th, was sent to him for payment, and on the 13th of December 1837, he declined making payment of that bill or any other, on account of his brother. Soon after, the plaintiff presented the bill to the selectmen of the town of Medfield. The town immediately chose an agent to remove said Allen from the hospital to their own almshouse. Said agent went to the hospital and demanded of the superintendent, and also of the trustees, the release of said lunatic ; but they refused to discharge him, and he has remained there ever since.

Defendants to be defaulted, if in the opinion of the court the plaintiff can maintain an action on the foregoing facts, and judgment to be rendered for the whole of the plaintiff's demand, or for so much thereof as the court shall direct ; otherwise, the plaintiff to become nonsuit.

*Merrick*, for the plaintiff.

*J. P. Bishop*, for the defendants.

WILDE, J.    This action is founded on the Rev. Sts. *c.* 48, § 9, which provide that the expenses of the State Lunatic Hospital, for the support of all lunatics, committed as therein directed, shall be paid by the town in which such lunatics had their settlement at the time of their commitment, unless in cases where other sufficient security, to the satisfaction of the trustees, shall have been taken for their support :   And it is further provided, that if any town shall neglect or refuse to pay the sum due for such expenses, for the space of thirty days after the same shall have been demanded by the treasurer, in writing, of the selectmen of the town liable therefor, the sum due may be recovered, for the use of the hospital, in an action to be brought, in the name of the treasurer, against such delinquent town.

By the facts agreed, it appears that Allen was lawfully committed to the hospital in June 1833, and that, at the time he was committed, he was an inhabitant of, and resided and had his settlement in, the defendant town ; and that he has been supported in the hospital ever since.

We also understand by the arguments and admissions of coun sel, that a demand has been made by the plaintiff on the defendants, for payment of the sum alleged to be due, according to the statute, although this fact is not expressly admitted in the statement of the case.

Considering these facts as admitted by the parties, we are of opinion, that the case has been made out in .favor of the plaintiff, within the letter and meaning of the statute.    It has been contended by the counsel for the defendants, that the remedy provided by the Rev. Sts. *c.* 48, § 9, is not applicable to cases where the commitments to the hospital had been made previous to the time when that statute went into operation, or previous to *St.* 1834, *c.* 150, which first subjected to liability the towns where lunatics, not being town paupers, resided at the time of the applications for their commitments.    In support of this construction of the statute, the defendants' counsel rely on the case of *Foster* v. *Inhabitants of Worcester*, 16 Pick. 71.    But that case is distinguishable from the case at bar, in two particulars. In the first place, that case depended on the construction of

*St.* 1834, *c.* 150, § 7, which provided that the accounts of the hospital, for the support of all patients committed thereto, should be regularly charged to and should be paid by the town or city where the patient resided at the time of the application for his commitment. And it was said, in that case, that this provision seemed to apply "only to the cases of those patients who had been committed *on application.*" There is no such limitation to the remedy given by the forty eighth chapter of the revised statutes. That chapter provides, in express terms, for the support of all lunatics committed by any of the judicial officers mentioned therein. Very probably the limitation, as to commitments *on application,* was omitted in consequence of the remarks made in *Foster* v. *Inhabitants of Worcester.* But however this may be, we think the present case is within the obvious meaning of the revised statutes.

But there is another and more material distinction between the case under consideration and the case of *Foster* v. *Inhabitants of Worcester.* In the latter case, the lunatic had been committed to the house of correction, and from thence had been removed to the hospital ; and the court held that the remedy, provided by the *St.* of 1834, did not apply to such a case, but only to cases of commitments to the hospital. It can, therefore, (the chief justice remarked,) have no application to the commitment of the lunatic to any jail or house of correction, at any period anterior to his removal to the hospital. That this case was decided on this point must be inferred from the decision in the case of the *Inhabitants of Worcester* v. *Inhabitants of Milford,* 18 Pick. 379, in which it was held that the expenses for the support of a lunatic committed to the hospital before the *St.* of 1834, *c.* 150, were chargeable to the town where the lunatic resided at the time of his commitment, and that such town was liable for the expenses which had accrued before, as well as those accruing after the statute passed. It appears to us, therefore, very clear, that the Rev. Sts. *c.* 48, § 9, cannot be so construed as to limit the remedy to cases of commitment after the revised statutes went into operation.

Another objection to the action is made by the defendants'

counsel, viz. that by the repeal of the statute under which Allen, the lunatic, was committed, he was by law discharged from his commitment, and that he has since been held in the hospital without authority and against right. But we think there is no foundation for this objection. The repeal of the stat- ute did not vacate or annul a lawful commitment under it while it remained in force. It might as well be contended, that a judgment for a penalty, recovered by virtue of an existing statute, would be vacated by its subsequent repeal. The commitment, in this case, was founded on an adjudication lawfully made by the judge of probate for the county of Nor- folk, who had jurisdiction of the subject matter, upon the va- lidity of which the subsequent repeal of the statute, under which the adjudication and commitment were made, can have no effect.

The remaining objection to the validity of the plaintiff's de- mand depends on a question of fact. It is objected, that the trustees of the hospital assented to an arrangement made with the defendants by Joseph Allen, a brother of the lunatic, by which he agreed to pay the expenses of said lunatic's support, and to save the town harmless therefrom. But it is not agreed, that the officers of the hospital assented to this arrangement, in- tending to look to the said Joseph Allen for payment, and to exonerate the town. On the contrary, it is expressly agreed, that " of this arrangement the officers of the hospital had no knowledge." To exonerate the defendants from their liability under the statute, it must be made to appear, " that other suffi- cient security, to the satisfaction of the trustees of the hospital, nas been taken for the support " of the lunatic. And certainly this does not appear, nor could it be inferred by a jury from the facts agreed. It is true that Joseph Allen, after the arrange- ment made by him with the defendants, requested the plaintiff to send in the bills of expenses to him, as they became due, and that they were sent accordingly, and were paid by him for a time, and until he declined making any further payment. These payments were made by Joseph Allen, without any agreement

or stipulation, on the part of the trustees, to look to him for payment; they had no knowledge of the arrangement under which the payments were made, nor were they bound to inquire why they were made by him.

We are, therefore, of opinion, that the plaintiff is entitled to recover the whole amount of his demand. The refusal of the trustees and the superintendent of the hospital to discharge the lunatic, is no bar to the recovery of the subsequent expenses for his support; as it does not appear that the cause of his confinement had ceased, or that he had ceased to be dangerous, within the intent of the law. The defendants, therefore, had no legal right to demand his release and removal to their own almshouse.

Judgment is to be entered, on the default of the defendants, for the full amount of the plaintiff's claim.